leave any, will be entitled to the principal of his primary share, and his personal representative will be entitled to any accrued income from either the primary or secondary share then in the hands of the trustee, and the next of kin of the testatrix, as in case of intestacy, will be entitled to said secondary share, and if the said stepson shall leave no issue him surviving, then and in that event his primary share shall be applied to the principal of the share of the last surviving stepson and therewith invested, and the last surviving stepson shall be entitled to receive the income therefrom as long as he lives; (5) that upon the death of the last surviving stepson, his issue, if he leave any, will be entitled to the principal of his primary share, and his personal representative will be entitled to any accrued income from either the primary or secondary shares then in the hands of the trustee, and the next of kin of the testatrix, as in case of intestacy, will be entitled to said secondary shares, and if the said stepson shall leave no issue him surviving, then and in that event the next of kin of the testatrix will, in like manner, as in cases of intestacy, be entitled to the said primary share.

A decree in accordance with these conclusions may be entered herein upon the usual notice.

Decreed accordingly.

---

(95 Misc. Rep. 25)

### In re KEANE et al.

### In re FELD'S WILL.

(Surrogate's Court, Bronx County.   April, 1916.)

1. TRUSTS ⬤⟲331—TESTAMENTARY TRUST—ACCOUNTING—CONCLUSIVENESS OF ADJUDICATION.

Decrees approving testamentary trustees' accounts, but involving no objections to or specific rulings on the form of a particular investment, while sufficient to bar inquiry as to past transactions, do not preclude subsequent disapproval of that form of investment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 494; Dec. Dig. ⬤⟲331.]

2. TRUSTS ⬤⟲217(1)—INVESTMENTS—ACCUMULATION OF INCOME.

Where a will, though providing for the investment of the principal of the estate by the trustees, failed to expressly provide for the investment of any accumulated income in their hands but provided that, "during the minority of any beneficiary, my said trustees * * * may * * * accumulate the income from said share, * * * the accumulations of income, if any, to be paid over to such beneficiary upon his or her reaching the age of 21 years," the accumulations of income in the hands of the trustees could be invested by them in the same manner and on the same securities on which they were authorized to invest the principal.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–303, 309; Dec. Dig. ⬤⟲217(1).]

3. TRUSTS ⬤⟲217(3)—TESTAMENTARY TRUSTS—MANAGEMENT OF ESTATE—DEBTS DUE ESTATE.

In the absence of authority expressly conferred on them by testator, testamentary trustees cannot, in view of the investment of trust funds authorized by Decedent Estate Law (Consol. Laws, c. 13) § 111, treat

money owing to the estate as legal investments and permit it to remain as a deposit with or a loan to the debtor.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 306; Dec. Dig. ⬚⟿217(3).]

4. TRUSTS ⬚⟿217(1)—POWER OF CREATOR—INVESTMENTS.

The creator of a testamentary trust may prescribe how investments shall be made and what securities shall be taken for moneys invested.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–303, 309; Dec. Dig. ⬚⟿217(1).]

5. TRUSTS ⬚⟿217(3)—TESTAMENTARY TRUSTS—INVESTMENTS—WILLS.

A provision of a will creating a testamentary trust, which empowered the trustees to invest the trust funds "in such manner as they or he in their or his unrestricted discretion shall deem best without being limited to such forms of investment as are authorized by law for the investment of trust funds," authorized the trustees to invest in other than the usual securities.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 306; Dec. Dig. ⬚⟿217(3).]

6. TRUSTS ⬚⟿217(1)—TESTAMENTARY TRUSTS—INVESTMENT OF TRUST FUNDS—DISCRETION—REVIEW BY COURTS.

A will giving testamentary trustees discretion to invest trust funds free from the statutory restrictions relating thereto does not deprive the courts of power to review the exercise of such discretion and, if need be, correct any abuse thereof.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–303, 309; Dec. Dig. ⬚⟿217(1).]

7. TRUSTS ⬚⟿217(3)—INVESTMENT OF TRUST FUNDS—DISCRETION.

That a will gave trustees discretionary power to invest trust funds free from the usual statutory restriction did not authorize them to treat as a loan a debt due the estate from a corporation in which the trustees were interested as individuals, though testator had permitted a part of such debt, moneys due him as a stockholder for balances of unpaid profits, to remain in the treasury of the corporation as part of its working capital.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 306; Dec. Dig. ⬚⟿217(3).]

8. TRUSTS ⬚⟿181(1)—COLLECTION OF DEBTS—REASONABLE TIME.

What constitutes a reasonable time within which trustees should insist on payment of money due the estate depends on the circumstances of each particular case; the test being whether they have used that diligence and prudence in converting the debt into cash which careful and intelligent men would have used in the management of their own affairs.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 234; Dec. Dig. ⬚⟿181(1).]

9. TRUSTS ⬚⟿181(1)—TRUSTEES—ACCOUNTING—UNCOLLECTED DEBTS.

Where testator owned 80 per cent. of the stock of a corporation indebted to him, and the entire will and powers given the trustees showed that he had absolute confidence in them and relied on their judgment to see that collection was not made from the corporation so as to hurt its business, the trustees were not chargeable for the amount of such unpaid debt as cash, but for it as a debt due from the corporation to them as trustees.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 234; Dec. Dig. ⬚⟿181(1).]

10. TRUSTS ⬚⟿218(2)—INVESTMENT BY TRUSTEES—CONSENT OF BENEFICIARIES.

Where adult beneficiaries of trust funds have consented to the trustees' leaving on deposit with a corporation as an investment items due from

⬚⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the corporation, they are estopped from questioning such investment on a subsequent accounting by the trustees.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 313; Dec. Dig. ☞218(2).]

Proceeding on the intermediate judicial settlement of the account of Thomas J. Keane and others, trustees under the last will and testament of George A. Feld, deceased. Decree according to opinion.

William A. Montross, of New York City, for petitioner.

Maurice S. Cohen, of New York City, special guardian, for infant respondents.

SCHULZ, S.   This is a proceeding brought for the intermediate judicial settlement of the account of the trustees under the last will and testament of the decedent. The latter left him surviving a widow, two daughters, three sons, and seven grandchildren.

By the fourth paragraph of his will he leaves all the rest, residue, and remainder of his estate to the trustees therein named, who are the accountants in this proceeding, with the proviso that one-third thereof shall be invested for the benefit of his widow during the term of her natural life, giving to the trustees the authority at their discretion at any time during her life to pay over, transfer, and convey the whole or any part of the principal and corpus to her free from the trust. Upon her death they are to convey the principal and corpus of said one-third, or so much thereof as may then remain, to his children then surviving and to the lawful issue then surviving of any of his children who shall have died, in equal shares per stirpes and not per capita, the shares of such as may be under 21 years of age to be retained by the trustees who shall continue to hold the same in trust until the minors shall respectively have reached the age of 21 years. He also gave the trustees authority in their discretion during the minority of such infants to transfer and convey to the beneficiaries the whole or any part of the income or principal of such share and provided for the disposition of the latter in case of the death of such infant beneficiary during his or her minority. The remaining two-thirds of his residuary estate he directed should be divided into as many shares as shall equal the number of his children him surviving, together with the number of children that have predeceased him leaving issue surviving, each part representing a child who shall have died to be equally divided per stirpes and not per capita.

This two-thirds part he also gave and bequeathed to the trustees to invest and keep invested the parts or shares thereof in such wise that it would be divided equally among his children and descendants. per stirpes and not per capita. The proceeds of each share he directed to be paid over to the beneficiaries of the share, with the right in the discretion of the trustees to pay over, transfer, or convey the whole or any part of the principal or corpus of the share of such beneficiary to him or her free from the trust. He gave the beneficiaries of the trust last mentioned a power of appointment by will, and in default of its. exercise directed that so much of the principal or corpus of the

estate as remained should be paid to the heirs and next of kin of such beneficiaries.

The decedent owned 80 per cent. of the capital stock of the corporation known as George A. Feld Company, which had an authorized capital stock outstanding of $25,000. The nature of the business conducted by the corporation does not appear from the papers before me. He also owned the building in which the said George A. Feld Company carried on its business. At the time of the death of the testator the corporation was indebted to him in the sum of $145,450.22, representing a balance for compensation and profits accrued which the decedent had not withdrawn from the corporation, but had permitted to remain in the treasury as a part of the working capital, and which was credited to him on the books of the corporation, and was, in form, a debt of the corporation. This amount has been reduced since his death to the sum of $100,347.60 by payments made by the corporation to the estate, and the latter amount is stated to be on deposit with the corporation "as an investment." A balance of dividends declared since the death of the testator in the sum of $1,314.92 and rent amounting to $1,000 since accrued are stated to have been received by the accountants and left on deposit with the corporation. The trustees have credited themselves with the sum of $100,347.60, above stated, as being an investment of trust funds. They have then assigned and credited to themselves in trust for each of the beneficiaries a part of this alleged investment. The same procedure was adopted by the trustees with reference to the balance of dividend and the rent above referred to.

Among the children and grandchildren who are beneficiaries under the trust, either present or contingent, are 10 infants, represented in this proceeding by a special guardian. The special guardian has filed objections to the main items referred to above, and also to the items with which the trustees have credited themselves on behalf of each of the beneficiaries, the legal effect of which is to put in issue the right of the trustees to leave these various amounts on deposit with or due from the corporation, and to credit themselves therewith as investments of the trust funds, and also their right to credit themselves, as trustees for the various beneficiaries, with proportionate parts thereof. In other words, the question is raised whether, under the language of the will defining the powers of the trustees, the latter can regard the indebtedness from the corporation to the testator existing at the time of the latter's death and the balance of dividends and the rent which accrued since his death, and which latter two items they received and left on deposit with the corporation, as investments of the trust funds. All of the adults interested in the trusts are satisfied with the procedure adopted by the trustees and urge that the account be approved as filed.

The accountants contend that as to the objection to the item of $100,347.60, heretofore referred to, and this would no doubt apply to the objections made to the proportionate amounts heretofore assigned by the trustees to themselves as trustees for the beneficiaries, the issue raised is res adjudicata, because the executors in their account filed about one year ago claimed credit for an item of $102,162.52, of which the first-mentioned sum was a part, which consisted of the indebtedness

·named, which they had turned over in kind to the trustees, and which they stated was to be left by the said trustees on deposit with the company as an investment and for the purpose of furnishing the company with necessary capital. No objections were interposed to this account by any of the parties thereto, although all the parties now before the court were parties to that proceeding and a decree settling the account as filed was made.

[1] I am satisfied, however, and hold, that the issues before me have not been adjudicated in the accounting proceeding referred to. Matter of Bannin, 142 App. Div. 436, 127 N. Y. Supp. 92, seems to me to be conclusive on that proposition. In that matter the executors had accounted, as such, and all persons having an interest either as life tenants or remaindermen in the estate had been duly cited. The accounts had been passed without objection, and the executors had turned over the estate to themselves as trustees. They had thereafter, as trustees, had four prior accountings. It appeared that in the first accounting by the trustees there had appeared an item showing that the deceased had an interest in a firm of which no settlement had been made. In the third accounting this interest was again set forth, with the statement that no settlement had been made with the surviving partner. The court, in considering the question of res adjudicata, said (142 App. Div. 442, 127 N. Y. Supp. 96):

"We think, where no objections were interposed, and no specific ruling had thereon by the court, and the decree upon the accounting merely approved the accounts as rendered and fixed the amounts in the hands of the trustees, that this, while sufficient to bar inquiry as to past transactions, was not such an approval of the mode of investment as to preclude the court upon a subsequent accounting from disapproving of the continued contribution to the capital of a going concern. * * * As it does not appear that this matter was specifically passed upon on the former accountings, as no attempt is made to charge the trustees with any funds distributed or paid out by them which had been approved upon the former accounting, as the fund remains in their hands and under their control, and as, even if there was an approval of the original transaction, the membership and capital of the copartnership has materially changed since the last accounting, we discover no bar to the present consideration of the question whether this trust fund should remain subject to the hazards of the general partnership in a mercantile concern."

See, also, Matter of Hoyt, 160 N. Y. 607, 55 N. E. 282, 48 L. R. A. 126; Matter of Elting, 93 App. Div. 516, 87 N. Y. Supp. 833; Bowditch v. Ayrault, 138 N. Y. 222, 33 N. E. 1067; Matter of Leask, 159 App. Div. 102, 143 N. Y. Supp. 865.

It therefore becomes necessary to examine the provisions of the will which define the powers of the trustees. By the eighth paragraph the testator provided as follows:

"I authorize and empower my said trustees and their successors and the survivors and survivor of them to invest said trust funds in such manner as they or he in their or his unrestricted discretion shall deem best, without being limited to such forms of investment as are authorized by law for the investment of trust funds. And in case any part of such trust funds shall at any time be invested in bonds or other securities payable at a fixed or determinable date, the value of which shall be more than par, I direct that the whole of the interest and other income therefrom be paid to the benefi-

ciary, without making any deduction therefrom for the preservation of the principal."

[2] The trust provision with regard to the two-thirds of the residuary estate hereinbefore referred to provides for the collection of the rents, issues, income, etc., of each share and the payment of the same over semiannually or oftener to the beneficiary of said share, and then follows this provision:

"Except that during the minority of any beneficiary my said trustees or their successors or the survivors or survivor of them may in their discretion accumulate the income from said share, or may pay over to, or use for the benefit of, such beneficiary, at any time or times during his or her minority, the whole or any part of such income, the accumulations of income, if any, to be paid over to such beneficiary upon his or her reaching the age of twenty-one years."

Under this provision, I am of the opinion that any income which has accumulated in the hands of the trustees as indicated may be invested by them in the same manner and on the same securities upon which they were authorized to invest the principal. Matter of Stewart, 30 App. Div. 368, 51 N. Y. Supp. 1050, affirmed on opinion below 163 N. Y. 593, 57 N. E. 1125. Hence, if it is proper for the trustees to permit the amount which was due to the testator to remain on deposit with, or as a loan to, the corporation under the powers with which they were vested by the will, it was also proper for them to leave the shares of the income, namely, of the item of balance of dividend, $1,314.92, and the item of $1,000 for rent, to remain on deposit in the same way.

[3, 4] That the trustees could not treat the amounts referred to as legal investments, in the absence of special authority conferred upon them by the testator, there can no longer be any doubt in this state. Underhill, Wills, § 790; Thomas, Law of Estates, 741 et seq.; Perry, Trusts, §§ 452, 456; King v. Talbot, 40 N. Y. 76; Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753, affirmed, no opinion, 167 N. Y. 629, 60 N. E. 1123; Toronto Gen. Trust Co. v. Chicago, B. & Q. R. R. Co., 64 Hun, 1, 9, 18 N. Y. Supp. 593, affirmed on opinion below 138 N. Y. 657, 34 N. E. 514; Matter of Avery, 45 Misc. Rep. 529, 549, 92 N. Y. Supp. 974; Decedent Estate Law, § 111, being Laws 1909, c. 18, and constituting Consol. Laws, c. 13; Personal Property Law, § 21, being Laws 1909, c. 45, and constituting Consol. Laws, c. 41; Banking Law, §§ 239, 239a, being Laws 1914, c. 369, as amended by Laws 1915, c. 269, and constituting Consol. Laws, c. 2. And it is equally well settled that the creator of a trust may prescribe how the investments shall be made and what security shall be taken for moneys invested. Denike v. Harris, 84 N. Y. 89; Thorn v. De Breteuil, 86 App. Div. 405, 424, 83 N. Y. Supp. 849, modified, 179 N. Y. 64, 71 N. E. 470; Matter of Stewart, supra.

[5] It is first to be determined, therefore, whether they were given the authority to invest in other than the usual securities. As to this the language of the paragraph of the will quoted above leaves no doubt in my mind. Matter of Hall, 164 N. Y. 196, 58 N. E. 11; Matter of Vom Saal, 82 Misc. Rep. 531, 145 N. Y. Supp. 307; Matter of Ketel-

tas, 1 Conn. Sur. 468, 6 N. Y. Supp. 668; Lawton v. Lawton, 35 App. Div. 389, 54 N. Y. Supp. 760.

[6] But notwithstanding the fact that the trustees have the authority stated, and however large the discretion in them may be, the court nevertheless does not lose its power to review the use of this discretion, and, if need be, to correct any abuse in its exercise. In Matter of Hall, supra, the language of the will was as follows:

"I hereby give my said executors and trustees hereinbefore named full power to reinvest * * * in any security real or personal which they may deem for the benefit of my estate and calculated to carry out the intention of this my last will."

Here the testator had been in the business of manufacturing umbrellas, and by his will he directed that his interest in the business be closed on the 1st day of January or the 1st day of July immediately following his decease. The executors invested in the stock of a corporation in the same line of business. The Court of Appeals, in discussing the power granted to the trustees and their exercise of it in the manner indicated, said:

"We concede that under the terms of the will the trustees were given a discretion as to the character of the investments they might make, and that they were not limited to the investments required by a court of equity in the absence of any directions from a testator. The trusts of this will are to provide the testator's children with income during their lives, and on their deaths the principal is to go to their issue. The very object of the creation of the trust was, therefore, the security of the principal; otherwise, the testator might better have given the property outright to his children, who were the primary objects of his bounty"

—and then disapproved of the investment made.

In Matter of Vom Saal, supra, the will contained a provision very much similar to the one under consideration, empowering the executors—

"to invest and reinvest the proceeds, in such amounts and in such manner as may to them in their absolute discretion seem advisable, although the said investments may not be of the character permitted for the investment of trust funds by the ordinary rules of law."

And the learned surrogate said:

"It seems to me that a proper construction of the clause under consideration permits the executors to invest the trust fund in securities other than so-called court securities, or those mentioned in section 111 of the Decedent Estate Law, using such diligence and such prudence in the care and management of the trust funds as prudent men of discretion and intelligence in such matters employ in their own like business concerns. If the executors and trustees in their discretion do not invest the funds in such securities as are mentioned in said section 111, known generally as court securities, in case of the depreciation of the investments their conduct as to good faith, diligence and prudence may be inquired into on a settlement of their accounts. If, in the investment of the funds, they should take securities which diligent and prudent men, acting in good faith, would not take, they would be held liable for the loss, but if they should act with the good faith, prudence and diligence which would characterize a good, careful business man under the circumstances in the investment of funds, they would not be held liable, although there might be a loss."

See, also, Clark v. Clark, 23 Misc. Rep. 272, 286, 50 N. Y. Supp. 1041, and cases cited; Matter of Hirsch, No. 1, 116 App. Div. 367, 101 N. Y. Supp. 893; affirmed without opinion 188 N. Y. 584, 81 N. E. 1165.

[7] In the pending matter it appears that all of the trustees are directors, one of them is the president, and two of them are stockholders of the corporation with which the items in question are deposited and which uses them as a part of its working capital. Without in the slightest degree impugning the good faith of trustees, or even inquiring into it, the courts have always looked with disfavor upon the investment of trust funds in enterprises where the interests of the trustees as individuals may come in conflict with their interests in the fiduciary relation. Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; Matter of Hirsch, No. 1, supra; Matter of Stallo, 82 Misc. Rep. 135, 143 N. Y. Supp. 775; Pyle v. Pyle, 137 App. Div. 568, 122 N. Y. Supp. 256, affirmed without opinion 199 N. Y. 538, 92 N. E. 1099; Munson v. Syracuse, G. & C. R. R. Co., 103 N. Y. 59, 8 N. E. 355.

Nor does the fact that the testator allowed the moneys due him for balances of unpaid profit to remain in the treasury of the corporation as a part of the working capital of itself justify the exercise of the discretion of the trustees in continuing the same as an investment. If under the will and the power given them as trustees it would have been an improper exercise of discretion to invest trust funds by loaning them to the corporation to be used by it as part of the working capital, then it is an equally improper exercise of such discretion to treat such a loan already made as an investment of trust funds and continue it as such. Perry, Trusts, §§ 454, 465; Matter of New York Life Ins. & Tr. Co., 86 App. Div. 247, 83 N. Y. Supp. 883; Toronto Gen. Trust Co. v. Chicago, B. & Q. R. R. Co., supra.

In my opinion it is not a proper exercise of discretion on the part of the trustees, under all the circumstances, to treat the amount due to the testator at the time of his death and the balance of dividends and rent due as investments of the trust funds. It follows that the objections of the special guardian must be sustained.

[8, 9] Assuming that my conclusions as stated are correct, the next question presented is whether the trustees should be charged with the items stated as cash. I consider first the item of $100,347.60, being the balance of the amount which was due from the corporation to the decedent at the time of his death. There is no rigid or arbitrary standard by which to measure the reasonable time within which the trustees in this matter were obliged to insist upon a payment of this amount. What is a reasonable time must depend upon the circumstances in each particular case, and what would be a reasonable time in one instance would not necessarily be so in another. The test is whether the trustees have used that diligence and prudence in converting the debt into cash which careful and intelligent men would have used in the management of their own affairs. Thomas, Law of Estates, p. 744; Perry on Trusts, § 465; Matter of Weston, 91 N. Y. 502; Matter of Hosford, 27 App. Div. 427, 430, 50 N. Y. Supp. 550; Matter of Wotton, supra.

Considering all of the circumstances in the matter before me, I am not prepared to hold that it was the duty of the trustees to insist upon the payment of this item as soon as it came into their hands, or since that time and up to the present. The decedent owned 80 per cent. of all the capital stock of the corporation which was indebted to him, and I cannot favor a construction which would have made it incumbent upon the trustees to withdraw immediately from the working capital of this corporation the large amount of money which the decedent had left with it. Such an intention cannot with reason be imputed to the testator, for I cannot believe that it was his wish possibly to imperil the corporation in which he was so largely interested by such a drastic exercise of power by the trustees. The latter were associated with the decedent in business. He must be presumed to have known them well. The whole will and the powers intrusted to them by the testator showed that he had absolute confidence, not only in their honor as men, but in their sagacity as business men. He not only made them trustees with power to distribute the income, but he gave them the right in their discretion to pay over the principal—a clear indication of the implicit trust that he had in their honesty and in their discretion. I am of the opinion that it was the testator's intention to leave it to the discretion of his trustees as to the time when and the manner in which this debt should be collected, relying upon their good judgment to see to it that it should not be done in such a way as to hurt the business of the corporation in which he was so largely interested. I hold that the trustees should be charged with the said item, not as cash, but as a debt due from the corporation to them as trustees.

As trustees it was and is their duty to collect this amount in such a manner and at such a time or times as this can be done without imperiling or unduly embarrassing the corporation. The latter seems to be in a flourishing condition, and if the trustees have used and do use reasonable and proper discretion and diligence in the matter which, judging from the confidence that the testator had in them, it is likely they will do, they cannot be justly criticized, even if a loss results.

As to the item of $1,314.92 balance of dividends and that of $1,000 rent, which was stated in the account to have been collected and deposited with the corporation as an investment, having reached the conclusion stated, the trustees will be surcharged with so much thereof as they have deposited with or loaned to the corporation as trustees for infant beneficiaries.

[10] Such beneficiaries of the various trust funds as are of full age who have consented to the trustees leaving the items last referred to on deposit with the corporation as an investment are estopped from questioning its propriety. These adult beneficiaries may, in the discretion of the trustees, become entitled to share in the principal. In case any of such beneficiaries should thus become entitled to a part of the item of $100,347.60, they are estopped from questioning the investment thereof as stated by the trustees by reason of their consent thereto and acquiescence therein. Matter of Hall, supra.

Decreed accordingly.